UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KENNETH LINSLEY,                                :
INDIVIDUALLY AND ON BEHALF OF    :
ALL OTHERS SIMILARLY SITUATED,   :
   PLAINTIFF,                                :
                                                          :  CIVIL ACTION NO. 3:11cv961(VLB)
                                                          :
v.                                                        :  APRIL 17, 2012
                                                          :
FMS INVESTMENT CORP.                     :
   DEFENDANT.                             :

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CUTPA CLAIMS [DKT. #16].**

Before the Court is Defendant FMS Investment Corp's ("FMS") motion to dismiss Plaintiff's Kenneth Linsley's ("Linsley") claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110, *et seq* pursuant to Fed. R. Civ. P. 12(b)(1). Defendant argues that Plaintiff's CUTPA claim is preempted by the Higher Education Act or in the alternative that Plaintiff has failed to plausibly allege ascertainable loss as required under CUTPA. For the reasons stated hereafter, Defendant's motion to dismiss Plaintiff's CUTPA claim is granted.

**Background and Alleged Facts**

On June 15, 2011, Plaintiff filed the instant class action lawsuit against FMS alleging violations of CUTPA and the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq*. [Dkt. #1, Compl.]. On March 3, 2012, Plaintiff moved to amend/ correct the complaint. [Dkt. #31]. On March 5, 2012, the Court denied Plaintiff's motion to amend/correct the complaint without prejudice to

1

refiling indicating how the proposed amended complaint differed from the operative complaint and demonstrating that the Defendant would not be prejudiced by the proposed amendment.  See [Dkt.#32].  To date, Plaintiff has not renewed his motion to amend/ correct the complaint and thus such right is waived.

The following facts are taken from Plaintiff's complaint.  Defendant FMS is a Maryland Corporation headquartered in Illinois and engaged in the collection of consumer debts.  [Dkt. #1, Compl. at ¶3].  Linsley was a debtor with federal student loans that were placed into default status.  [*Id.* at ¶6].  Linsley's loan was assigned to FMS for collection purposes.  [*Id.* at ¶7].

Linsley alleges that FMS sent him a letter misrepresenting the options to cure his loan default under the Income Contingent Repayment Program (ICRP). He alleges that FMS sent him a letter stating that he had two options to cure the default.  The first was rehabilitation and the second was consolidation.  He alleges that the letter falsely stated that in order to rehabilitate the loan he had to "[m]ake 9 consecutive agreed upon monthly payments to qualify." [*Id.* at ¶9]. Linsley further alleges that the letter falsely stated that to consolidate his loans he had to "make 6 – consecutive monthly payments."  [*Id.* at ¶10].

Linsely alleges that the FMS violated both the FDCPA and CUTPA by "falsely representing the law governing the amount of time in which the required nine payments for rehabilitation were to be made" and "falsely representing the law governing the number of payments required for consolidation and the

2

repayment options available to avoid having to pay any required payments for consolidation." [*Id.* at ¶¶28-29, 32].

Linsley alleges that under 20 U.S.C. §1078-6, 34 C.F.R. §685.212(f),[1] and 34 C.F.R. § 682.405(b)(1)(ii), a debtor must make nine payments within ten consecutive months to rehabilitate a loan that rather than the nine months stated in the letter. [*Id.* at ¶11]. Linsley further alleges that under 34 C.F.R. §§ 685.220(d)(1)(ii)(C), 682.201(d)(1)(i)(A)(3), 685.102(b), 682.200(b) consolidation is allowed if "satisfactory repayment arrangements have been made" and satisfactory repayment has been defined as "the making of three consecutive, voluntary, on-time- full monthly payments on a defaulted loan" rather than four payments. [*Id.* at ¶ 12]. Lastly, Linsley alleges that 34 C.F.R. §§ 685.220(d)(1)(ii)(D), 682.201(d)(1)(i)(A)(3) allow for consolidation without any qualifying payments if the borrow agrees to repay a loan under an ICRP, an Income Sensitive Repayment Plan (ISRP), or an Income Based Repayment Plan (IBR) depending on the loan type. [*Id.* at ¶ 13].

**Legal Standard**

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject

---

[1] It appears that Plaintiff erred in citing 34 C.F.R. section 685.212(f). The appropriate section is 34 C.F.R. section 685.211(f)(1).

3

matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Id.* In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir. 2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Analysis

   i.   *Plaintiff's CUTPA claims are expressly preempted by the Higher Education Act*

Defendant argues that Plaintiff's CUTPA claim is expressly preempted by the Higher Education Act of 1965, 20 U.S.C. §§1001-115 ("HEA"). "Congress enacted the Higher Education Act of 1965 … '[t]o strengthen the educational resources of our colleges and universities and to provide financial assistance for students in post-secondary and higher education.'" *NcNamee, Lochner, Titus & Williams, P.C. v. Higher Educ. Assistance Foundation*, 50 F.3d 120, 121 (2d Cir.

4

1995) (citing Pub.L. No. 89–329, 79 Stat. 1219).  The Second Circuit has noted that the "attempted accomplishment of these purposes has resulted in a complicated set of statutes and regulations." *Id.* "'Title IV of the Higher Education Act governs federally-funded student financial aid programs for college and post-secondary vocational training. 20 U.S.C. § (s)1070 et seq' … 'the purpose of these programs is to make available and subsidize student loans from private lenders with repayment insured by the government.'" *Brooks v. Salle Mae, Inc.*, No.FSTCV096002530S, 2011 WL 6989888, at *4 (Conn. Super. Ct. Dec. 20, 2011) (quoting *Coalition of New York State Career Schools, Inc. v. Riley*, 129 F.3d 276, 277 (2d Cir. 1997; *Chauffeur's Training School, Inc. v. Spellings*, 478 F.3d 117, 120 (2d Cir. 2007)).  "'The Secretary of the Department of Education is authorized to prescribe such regulations as may be necessary to carry out the purposes" of the Federal Family Education Loan Programs." *Id.* (quoting 20 U.S.C. §1082(a)(1)). Linsley essentially alleges that FMS's letter violated CUTPA by falsely representing the HEA's requirements for loan consolidation and rehabilitation.

"The doctrine of federal preemption is rooted in the Supremacy Clause of the United States Constitution, which provides that 'the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir. 2009) (quoting U.S. Const. art. VI. cl.2).  "Federal preemption of a state statute can be express or implied, and generally occurs: [1] where Congress has expressly preempted state law, [2] where Congress has legislated so

5

comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or [3] where federal law conflicts with state law." *SPGGC, LLC v. Blumenthal,* 505 F.3d 183, 188 (2d Cir. 2007) (internal quotation marks and citation omitted). "The key to the preemption inquiry is the intent of Congress … Congress may manifest its intent to preempt state or local law explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *New York SMSA Ltd. Partnership v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (internal citations omitted).

Where "a statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *In re September 11 Property Damage Litig.*, 650 F.3d 145, 151 (2d Cir. 2011). The Second Circuit has further explained that "[w]here the language of the statute plainly indicates that Congress intended preemption, '[w]e must give effect to th[e] plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning.' If the text of the statute is ambiguous, either as to Congress's intent to preempt at all or as to the extent of an intended preemption, the meaning of the statute may be gleaned from its context and from the statutory scheme as a whole, or by resort to the normal canons of construction and legislative history." *In re WTC Disaster Site*, 414 F.3d 352, 372 (2d Cir. 2005) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983)).

The HEA expressly preempts "the operation of state usury laws, statutes of limitations, limitations on recovering the costs of debt collection, infancy defenses to contract liability, wage garnishment limitations, and [of particular relevance to the matter at hand] disclosure requirements." *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010) (citations omitted).  FMS contends that Linsley's CUTPA claim is expressly preempted by Section 1098g which provides that "[l]oans made, insured, or guaranteed pursuant to a program authorized by Title IV of the [HEA] shall not be subject to any disclosure requirements of any State law." 20 U.S.C. § 1098g.[2]  FMS argues that Linsley's CUTPA claim is that FMS's letter failed to accurately describe the HEA's rehabilitation and consolidation provisions and the regulations promulgated thereunder and therefore such claim is expressly preempted by Section 1098g.

Neither the Second Circuit nor any district court within the Second Circuit has addressed whether the HEA's express disclosure preemption provision preempts CUTPA.  The Ninth Circuit Court of Appeals recently considered a similar preemption question and held that claims under California's Unfair Competition Law and Consumer Remedies Act alleging that servicer made fraudulent misrepresentations in billing statements and coupon books were expressly preempted by Section 1098g.  *Chae*, 593 F.3d. at 942.  In addition, a

---

[2] **Neither party disputes that the loans in question were authorized by Title IV of the HEA.   In addition, under the HEA the express remedy for improper or incorrect disclosures by services is to report the services to the DOE and for the DOE to institute formal or informal compliance procedures against the servicer. *See* 20 U.S.C. §§ 1082(a)(2), (g)(1), (h)(1), (j)(1); 34 C.F.R. § 682.703; *see also Chae*, 593 F.3d at 943 n.6.**

Connecticut Superior Court has recently addressed a substantially similar question regarding whether Section 1098g expressly preempts CUTPA.  *See Brooks v. Salle Mae, Inc.*, 2011 WL 6989888.  Invoking the Ninth Circuit's reasoning in *Chae*, the Connecticut Superior Court reasoned that where a CUTPA claim is rooted in a failure to disclose information required by the HEA such claim would likely fall within the HEA's express preemption provisions under Section 1098g.  *See Brooks v. Salle Mae, Inc.*, 2011 WL 6989888.

The Ninth Circuit in *Chae* considered whether the defendant's alleged unfair or fraudulent practices of using "billing statements and coupon books that trick borrowers into thinking that interest is being calculated via the installment method when Sallie Mae really uses a simple daily calculation" and "using statements that set the first repayment date" were preempted by the HEA.  In *Chae*, the plaintiffs argued that "that the billing statements and standardized loan applications 'misrepresent[ ] that the Student Loans confer rights, remedies, and obligations' which do not exist, thereby constituting an unfair or deceptive practice." *Chae*, 593 F.3d at 942 (quoting Cal. Civ. Code § 1770(a)).  The Ninth Circuit concluded that the plaintiffs' "allegations in substance to be a challenge to the allegedly-misleading method Sallie Mae used to communicate with the plaintiffs about its practices" and therefore "[i]n this context, the state-law prohibition on misrepresenting a business practice 'is merely the converse' of a state-law requirement that alternate disclosures be made." *Id.* at 942-43 (quoting, *Cipollone v. Ligget Group, Inc.*, 404 U.S. 505, 527 (1992)).

The Ninth Circuit rejected plaintiffs' argument that their claim was not predicated on non-compliance with the HEA's disclosure requirements since "they do not seek specific disclosures, but merely seek to stop Sallie Mae from fraudulently and deceptively misleading borrowers through the written documents." *Id.* at 943 (citations omitted).  The Ninth Circuit reasoned based on the Supreme Court's decision in *Cipollone* that "preemption cannot be avoided simply by relabeling an otherwise-preempted claim." *Id.* (citing *Cipollone*, 404 U.S. at 527).  In *Cipollone*, the Supreme Court concluded that smokers fraudulent misrepresentation claim that cigarette manufacturers "through their advertising, neutralized the effect of federally mandated warning labels" was "predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking."  404 U.S. at 527.  The Supreme Court reasoned that "[s]uch a *prohibition,* however, is merely the converse of a state-law *requirement* that warnings be included in advertising and promotional materials" and therefore held that Section 5(b) of the Federal Cigarette Labeling and Advertising Act preempted the fraudulent misrepresentation claim and "supersede[d] petitioner's first fraudulent-misrepresentation theory." *Id.* (emphasis in the original).  The Ninth Circuit reasoned based on *Cipollone* that "[a] properly-disclosed [HEA] practice cannot simultaneously be misleading under state law, for state disclosure law is preempted by the federal statutory and regulatory scheme" and therefore "plaintiffs' claims challenging the language in Sallie Mae's billing statements and

coupon books are restyled improper-disclosure claims, and are therefore subject to express preemption under 20 U.S.C. §1098g." *Chae*, 593 F.3d at 943.

In *Brooks*, the Connecticut Superior Court considered on summary judgment whether the HEA preempted plaintiff's CUTPA claims. The plaintiff in *Brooks* first argued that the defendant violated CUPTA by failing to "inform [the plaintiff] of her other options if she was unable to comply with [economic deferment] requirements as [the defendant] had represented them' and refused to inform the plaintiff of 'what other information she could submit as proof of her recent income which would allow [the defendant] to determine her eligibility for [economic deferment].'" 2011 WL 6989888, at *5. The *Brooks* court concluded that "[t]o the extent that CUTPA requires the defendant to disclose the information that the plaintiff sought, there is no genuine issue of material fact but that § 1098g preempts those factual allegations." *Id.* The plaintiff also argued that the defendant violated CUTPA by "misrepresent[ing] the documentation requirements to determine eligibility for economic deferment and 'misrepresented that [the plaintiff] had to pay all late fees' before she could enter economic deferment." *Id.* at 6. The *Brooks* court acknowledged that "[t]here is authority for ruling that misrepresentation claims are, in fact, improper disclosure claims" and discussed the Ninth Circuit's decision in *Chae*. *Id.* The *Brooks* court noted that the alleged misrepresentations at issue in *Brooks* "are not unlike those in *Chae*" and reasoned that "[t]he plaintiff's allegations that the defendant misrepresented the documentation requirements to determine eligibility for economic deferment and misrepresented that the plaintiff had to pay all late fees before she could

10

enter economic deferment are no different than a claim that the defendant failed to make proper disclosures to the plaintiff regarding its policies for economic deferment. If properly disclosed, the information that the plaintiff sought could not simultaneously be misleading. Accordingly, these aspects of the plaintiff's CUTPA claim are also subject to express preemption under § 1098g." *Id.* (citation omitted).

The *Brooks* court distinguished between claims based on disclosure and claims based on processing practices noting that the plaintiff had made additional allegations that were not predicated on improper disclosures and therefore concluded that those claims were not preempted. The plaintiff in *Brooks* had further alleged that defendant "'purposefully delayed the processing of her December 2007 [economic deferment request] in order to drive up late fees'" and 'refused to accept income information supplied by [the plaintiff]" that complied with §682.210 (s)(6)(vi)'" which the *Brooks* court concluded could not be considered an improper disclosure claims and therefore they were not expressly preempted by Section 1098g. *Id.* The *Brooks* court concluded that since only "specific factual allegations of the plaintiff's CUTPA claim are expressly preempted by Section 1098g while other parts of the claim [were] not" the court could not grant summary judgment on plaintiff's CUTPA claim in its entirety. *Id.* at 7. After the *Brooks* court's decision denying summary judgment, the plaintiff in *Brooks* moved to strike defendant's special defense of HEA preemption. The *Brooks* court issued a subsequent opinion denying the motion to strike holding that HEA preemption was properly raised as a special defense

11

and that defendant may present evidence at trial demonstrating that plaintiff's claims are either expressly or impliedly preempted by the HEA. *See Brooks v. Sallie Mae, Inc.*, No.FSTCV096002530S, 2011 WL 383802, at *8 (Conn. Super. Ct. Jan. 4, 2011).

Here Linsley's CUTPA claim is substantially similar to both the improper disclosure claims made in *Chae* and *Brooks* and does not assert an improper processing claim as was alleged in *Brooks*. As was the case in *Chae* and *Brooks*, Linsely's misrepresentation claim is predicated on FMS's failure to properly disclose the HEA's requirements for loan consolidation and rehabilitation. If FMS had properly disclosed such requirements, the information "sought could not simultaneously be misleading." *Brooks*, 2011 WL 6989888, at *6. Therefore, Linsley, as was the case in *Chae*, may not avoid preemption by relabeling his otherwise-preempted claim as one of misrepresentation and not improper disclosure. *Chae*, 593 F.3d at 943. Accordingly, Linsley's CUTPA claim is likewise subject to express preemption under Section 1098g and the Court therefore grants the FMS's motion to dismiss Linsley's CUPTA claim. Since the Court has found that Linsely's CUTPA claim is subject to express preemption, the Court need not address FMS's other arguments that Linsely's CUTPA claim is also subject to field or conflict preemption.

    ii.    *Plaintiff failed to adequately allege ascertainable loss*

In the alternative, FMS argues that Linsely's CUTPA claim should also be dismissed for failure to plausibly allege ascertainable loss. "[T]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or

12

deceptive acts or practices in the conduct of any trade or commerce . . . and (2) each class member claiming entitlement to relief under CUTPA has suffered an ascertainable loss of money or property as a result of the defendant's acts or practices." *Neighborhood Builders, Inc. v. Town of Madison*, 294 Conn. 651, 657 (2010) (quoting CONN. GEN. STAT. § 42-110b(a); CONN. GEN. STAT. § 42-110g(a)). "The ascertainable loss requirement is a threshold barrier that limits the class of persons who may bring a CUTPA action seeking either actual damages . . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation." *Neighborhood Builders, Inc.*, 294 Conn. at 657 (2010) (*quoting Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217-18 (2008)). Further, the "issue of ascertainable loss . . . must be addressed before a court may consider the other criteria for class certification." *Neighborhood Builders, Inc.*, 294 Conn. at 657 (2010) (*citing Artie's Auto Body, Inc.*, 287 Conn. at 217-18).

"An ascertainable loss is a loss that is capable of being discovered, observed or established. The term loss . . . has been held synonymous with deprivation, detriment and injury. To establish an ascertainable loss, a plaintiff is not required to prove actual damages of a specific dollar amount." *Artie's Auto Body, Inc.*, 287 Conn. at 218 (citations and internal quotation marks omitted). But in order for a loss to be ascertainable it must be "measurable even though the precise amount of the loss is not known." *Id.*

"A plaintiff also must prove that the ascertainable loss was caused by, or 'a result of,' the prohibited act." *Id.* (quoting Conn. Gen. Stat. §42-110(g) (a)). "When

13

plaintiffs seek money damages, the language 'as a result of' in §42-110(g)(a) 'requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff.... [P]roximate cause is [a]n actual cause that is a substantial factor in the resulting harm.... The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act.'" *Id.* (quoting *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997)).

"When plaintiffs seek only equitable relief, ascertainable loss and causation may be proven 'by establishing, through a reasonable inference, or otherwise, that the defendant's unfair trade practice has caused the plaintiff [injury] .... The fact that a plaintiff fails to prove a particular loss or the extent of the loss does not foreclose the plaintiff from obtaining *injunctive relief* and [attorney's] fees pursuant to CUTPA if the plaintiff is able to prove by a preponderance of the evidence that an unfair trade practice has occurred and a reasonable inference can be drawn by the trier of fact that the unfair trade practice has resulted in a loss to the plaintiff.'" *Id.* at 218-219 (quoting *Serv. Road Corp. v. Quinn*, 241 Conn. 630, 644 (1997)). "When plaintiffs seek both monetary and equitable relief, proving that the unfair trade practice was a substantial factor in causing the plaintiffs' harm for the purpose of obtaining money damages also, by reasonable inference, serves to establish harm for the purpose of obtaining equitable relief." *Id.* at 219.

Linsely alleges that he and other class members sustained an ascertainable loss as a result of FMS's acts "in that they were denied the

14

flexibility to which they were entitled." *See* [Dkt. #1, Compl. at ¶ 34]. FMS argues that such allegations are insufficient as Linsley does not allege that he attempted to make nine payments in ten months or six consecutive monthly payments and was therefore prevented from rehabilitating or consolidating his loans. *See* [Dkt. #16, Def. Mem. at 13-14].

Linsely argues that he has sufficiently plead an ascertainable loss in that he has plead facts that he and the class members did not receive from FMS the benefit of what they bargained for. See [Dkt. #19, Pl. Mem. at 7-8]. Linsley further argues that he and the class members "are in contractual privity with FMS and FMS denied them the benefit of their bargain as well as the benefit of a statutory right by falsely representing their rehabilitation rights." [*Id.*]. In particular, Linsely argues that he and the class members were deprived of the "flexibility to which they were entitled as a benefit of their bargain with FMS." [*Id.*].

Courts have "consistently held that that false communications from a debt collector alone, without further damage to a plaintiff, are insufficient to constitute ascertainable loss." *Gervais v. Riddle & Associates, P.C.*, 479 F. Supp. 2d 270, 279-280 (D. Conn. 2007) (citing *Goins v. JBC & Assocs., P.C.*, 352 F.Supp.2d 262, 275 (D. Conn. 2005); *Maguire v. Citicorp Retail Servs., Inc.*, No.CIV3:95CV2113 (AHN), 1997 WL 280540, at *6 (D. Conn. May 19, 1997), aff'd in part, vacated and remanded in part on other grounds, 147 F.3d 232 (2d Cir. 1998); *Tragianese v. Blackmon*, 993 F.Supp. 96, 100 (D. Conn. 1997); *Young v. Citicorp Retail Servs., Inc.*, No.CIV.3:95CV1504(AHN), 1997 WL 280508, at *6-7 (D. Conn. May 19, 1997), aff'd, 159 F.3d 1349 (2d Cir. 1998); *Krutchkoff v. Fleet Bank, N.A.*, 960 F.Supp. 541,

15

550 (D. Conn. 1996)).   Here, Linsely's allegation really boils down to nothing further than a false communication from a debt collector alone.  Linsely has not alleged facts supporting a plausible inference that the purported lack of flexibility resulted in a harm to himself or other class members.  A lack of flexibility does not necessarily result in a loss.  It is equally plausible that the effect of the purported lack of flexibility resulted in a benefit to Linsley and other class members as opposed to some harm.  Accordingly, the alleged lack of flexibility without more is insufficient to constitute ascertainable loss under CUTPA.

### Conclusion

Based upon the above reasoning, Defendant's [Dkt. #16] motion to dismiss Plaintiff's CUTPA claims is GRANTED.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: April 17, 2012